IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| CHRISTOPHER J. FINA and CARLY ELIZABETH FINA, | ) ) ) | |
| Debtors, | ) ) | |
| WILLIAM A. ERHART, M. RYAN MADISON, RONALD R. BRADLEY and TERRI LEE BRADLEY, | ) ) ) ) | Case No. 1:12-cv-660 (GBL-TCB) |
| Appellants, | ) ) | |
| v. | ) ) | |
| CHRISTOPHER J. FINA and CARLY ELIZABETH FINA, | ) ) ) | |
| Appellees. | ) | |

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on appeal from the decision of the United States

Bankruptcy Court for the Eastern District of Virginia in which Bankruptcy Judge Robert G.

Mayer found homeowners Ronald and Terri Bradley ("the Bradleys") and their counsel in civil

contempt for willfully violating the Bankruptcy Court's discharge injunction. This case concerns

an action for defective workmanship brought by the Bradleys against Debtor Christopher Fina,

operating under the assumed name of Fina Homes and Remodeling. There are five issues before

the Court.

The first issue is whether the Bankruptcy Court erred by reopening Mr. Fina's case, and

staying the Bradleys' Minnesota lawsuit, pending the Bankruptcy Court's determination of

whether the Bradleys and their counsel violated the discharge injunction. The Court affirms the

Bankruptcy Court's decision because the Bankruptcy Court did not abuse its discretion in reopening the case upon Mr. Fina's motion, which sought relief from the Bradleys' attempt to recover a discharged debt.

The second issue is whether the Bradleys violated the discharge injunction by filing a post-discharge lawsuit in Minnesota, without first seeking leave from the Bankruptcy Court, to establish Mr. Fina's liability for the debt as a prerequisite to the Bradleys attempt to recover from the Minnesota Contractor Relief Fund ("MCRF"). The Court affirms the Bankruptcy Court's determination that the Bradleys' post-discharge conduct violated the discharge injunction because the Bankruptcy Court's underlying factual findings were not erroneous. Specifically, the Court holds that the record supports the Bankruptcy Court's factual findings that the Bradleys sought to recover a discharged debt as a personal liability to Mr. Fina by suing Mr. Fina in state court, knowing the debt was discharged under bankruptcy and therefore unrecoverable pursuant to the discharge injunction. Further, the Court affirms the Bankruptcy Court's conclusion that, because the Bradleys failed to seek leave from the Bankruptcy Court before proceeding in state court, it was precluded from appropriately modifying the injunction, which was necessary to preserve Mr. Fina's fresh economic start guaranteed by 11 U.S.C. § 524. These findings support the Bankruptcy Court's conclusion that the Bradleys violated the discharge injunction under § 524(a)(2).

The third issue is whether the Bankruptcy Court erred in concluding that the Bradleys were in contempt for violating the discharge injunction based, in part, upon its finding that the Bradleys willfully commenced their state lawsuit to recover a discharged debt when the Bradleys argue that they did not intend for the state lawsuit to subject Mr. Fina to personal liability. The

2

Court affirms the Bankruptcy Court's conclusion that the Bradleys acted willfully because the Fourth Circuit does not recognize a good faith defense to civil contempt.

The fourth issue is whether Mr. Fina is barred by the doctrines of laches and waiver from seeking sanctions and damages against the Bradleys when the Bradleys argue that Mr. Fina failed to timely raise his bankruptcy discharge upon discovering that the Bradleys had filed their lawsuit in Minnesota and were attempting to collect from the MCRF. The Court affirms the Bankruptcy Court's finding that the nine-month delay that occurred in this case was not unreasonable given the parties' conduct and communications, and therefore, the Court holds that the doctrines of laches and waiver do not bar Mr. Fina from recovering damages from and seeking sanctions against the Bradleys and their counsel for violating the discharge injunction.

The fifth issue is whether to affirm the Bankruptcy Court's award of damages, which includes attorney's fees and costs, as well as compensation for Mr. Fina's lost wages, lost vacation pay, and recompense for his pain and suffering, annoyance, and frustration, caused by the Bradleys' violation. The Court affirms the Bankruptcy Court's award of attorney's fees and costs, lost wages, and compensation for Mr. Fina's lost vacation time, but the Court reverses the Bankruptcy Court's award for Mr. Fina's pain and suffering, annoyance, and frustration. The Court holds that (1) Mr. Fina is not entitled to such damages because damages for emotional distress are not warranted in civil contempt cases, and (2) in any event, the evidence presented at trial does not support such an award because Mr. Fina did not establish that he suffered from a significant harm beyond trivial anxiety or distress as a result of the Bradleys' violation. Further, because the Bankruptcy Court awarded a blanket judgment of $4,000 representing Mr. Fina's damages for lost wages and vacation pay, which the Court holds are recoverable actual damages,

and for his emotional distress damages, which the Court holds are not recoverable, the Court

remands the case to the Bankruptcy Court for its recalculation of this award.

## I. Background

On August 8, 2006, homeowners Ronald and Terri Bradley entered into a written

agreement with Christopher Fina, operating under the assumed name of Fina Homes and

Remodeling, for a remodeling project to construct an addition to their home. R. at 69; Dkt. No.

1-2. Shortly after Mr. Fina began the work, a city inspector revealed several code violations and

issued a stop work order on the project. *Id.* at 70-74. The Bradleys attempted to have Mr. Fina

cure the violations and correct the defects; however, this attempt failed and the Bradleys

ultimately fired Mr. Fina. Thereafter, the Bradleys filed a lawsuit in Minnesota against Mr. Fina

and his father James Edward Fina, alleging several state law claims, including breach of contract

and fraud based upon Mr. Fina's defective workmanship.[1] *See* R. at 62-70; Dkt. No. 1-1.

The Bradleys served James Fina with the Minnesota summons and complaint. R. at 2;

Dkt. No. 1-9. However, the Bradleys were not able to locate Mr. Fina to serve him with process.

*Id.* On September 3, 2009, a default judgment of $40,865 was entered against James Fina in

Minnesota District Court because he failed to answer the Bradleys' complaint. *Id.* at 9.

However, the Bradleys discovered that James Fina was insolvent and unable to satisfy the

judgment and that Mr. Fina no longer resided in Minnesota, had moved to Virginia, no longer

had assets, nor operated Fina Homes any longer.

Concluding that they were unable to collect on a judgment from James and Christopher

Fina, the Bradleys considered recovering the sum owed from the MCRF. Minn. Stat. § 326B.89

---

[1] James Edward Fina was named as a party in the state court proceeding because, upon inspection of the state records, he was identified as the owner/licensee of Fina Homes and Remodeling, the entity under which Mr. Fina was operating.

(2009). The MCRF is designed to compensate homeowners for damages up to $50,000 caused by a licensed contractor's failure to perform, conversion of funds, or dishonest and deceptive practices. *Id.* § 326B.89, subd. 4. As a requirement to recovering from the fund, a homeowner must first obtain a judgment against the contractor regardless of whether the contractor is still operating or has filed for bankruptcy. *Id.* § 326B.89, subd. 6. In light of the MCRF's recovery requirements, the Bradleys proceeded to apply and seek reimbursement from the MCRF based upon the default judgment they received against James Fina. The state, however, denied their application because, according to the state's records, it was Christopher Fina, not James Fina, who should have been listed as the named party.

Consequently, the Bradleys sought to correct their MCRF application by listing Mr. Fina, but before they were able to do so, Mr. Fina filed his petition under Chapter 7 of the United States Bankruptcy Code in the Eastern District of Virginia, listing the Bradleys as creditors. Pursuant to the automatic stay provisions, which took effect at the commencement of the bankruptcy proceeding, the Bradleys ceased their collections efforts until Mr. Fina received his final discharge and his case was closed. On August 19, 2010, Mr. Fina received his final discharge, and his bankruptcy case was closed on August 23, 2010. R. at 2; Dkt. No. 1-11. Thereafter, on October 12, 2010, the Bradleys filed their Amended Complaint in Minnesota ("the Minnesota Complaint") against Mr. Fina and served it upon him on October 14, 2010. R. at *Id.* at 7. On the advice of the Minnesota Attorney General's Office, whose role it is to advise the MCRF, the Bradleys included language in their Complaint to indicate that the purpose of filing the Complaint was to obtain a judgment to recover from the MCRF. *Id.*

A number of communications between the parties ensued after the Bradleys served their Minnesota Complaint on Mr. Fina, which concerned the issue of whether the Bradleys could

pursue their judgment against Mr. Fina after he had received a discharge in which the Bradleys were listed as creditors. *Id.* at 86, 88. Unable to amicably resolve this issue, Mr. Fina petitioned the Bankruptcy Court to reopen the case and moved for the issuance of a show cause order against the Bradleys and their counsel. The Bankruptcy Court reopened the case and the matter was set for trial. The issue at trial was whether the Bradleys and their counsel were in contempt of the Bankruptcy Court's discharge injunction by filing the Minnesota Complaint, which sought a monetary judgment against Mr. Fina for the purpose of recovering from the MCRF when the Bradleys were listed as creditors in the underlying bankruptcy proceeding and thus were subject to the discharge injunction. On this issue, the Bankruptcy Court held that the Bradleys and their counsel were in civil contempt of court, finding that the Bradleys willfully violated the discharged injunction under 11 U.S.C. § 524(a)(2) because, despite the language attempting to limit the purpose of the suit to recovering from the MCRF, the Minnesota lawsuit subjected Mr. Fina to personal liability. Thus, the Bankruptcy Court found the Bradleys and their counsel in civil contempt and issued sanctions against them accordingly. The Bradleys filed a timely appeal in this Court. This Court has jurisdiction pursuant to 28 U.S.C. § 158(a).

## II. Standard of Review

District courts have jurisdiction to hear appeals "from final judgments, orders, and decrees" of bankruptcy courts. 28 U.S.C. § 158(a)(1) (2012). A district court reviews a bankruptcy court's findings of fact for clear error and a bankruptcy court's conclusions of law *de novo*. *Devan v. Phoenix Am. Life Ins. Co. (In re Merry-Go-Round Enters., Inc.)*, 400 F.3d 219, 224 (4th Cir. 2005). "If the bankruptcy court's account of the evidence is plausible in light of the record viewed in its entirety, the reviewing court may not reverse it even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Heilig-Meyers*

*Co., et al. v. Wachovia Bank, N.A., et al. (In re Heilig-Meyers Co.)*, 328 B.R. 471, 474-75 (E.D.

Va. 2005) (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573-74 (1985))

(internal brackets omitted).

### III. Analysis

#### A. Reopening the Bankruptcy Case

The Court affirms the Bankruptcy Court's decision to reopen Mr. Fina's bankruptcy case

because the Bankruptcy Court did not abuse its discretion in doing so. The Court holds that

reopening the case upon Mr. Fina's motion, which sought relief from the Bradleys' post-

discharge conduct and sanctions against them for violating the discharge injunction, was a

reasonable ground upon which to reopen the case, enabling the court to define the scope of its

previously imposed injunction and to determine Mr. Fina's rights under his discharge.

Section 350(b) of the Bankruptcy Code provides that "[a] case may be reopened in the

court in which such case was closed to administer assets, to accord relief to the debtor, or for

other cause." 11 U.S.C. § 350(b) (2006). "Whether a bankruptcy case should be opened is left to

the sound discretion of the bankruptcy court and depends on the circumstances of the case. *In re*

*Jones*, 367 B.R. 564, 567 (Bankr. E.D. Va. 2007). In considering the motion to reopen, the

bankruptcy court should "avoid ruling on the merits of the underlying matter to be considered,

thereby forcing the debtor to prove his case twice." *Id.* Therefore, the Court reviews the

Bankruptcy Court's decision to reopen Mr. Fina's case for an abuse of discretion. *Hawkins v.*

*Landmark Fin. Co. (In re Hawkins)*, 727 F.2d 324, 326 (4th Cir. 1984).

Here, Mr. Fina moved the Bankruptcy Court to reopen the case and to issue a show cause

order, alleging that the Bradleys' post-discharge lawsuit violated the Bankruptcy Court's

discharge injunction. Ultimately, Mr. Fina sought sanctions against the Bradleys for their then-

alleged violation. Upon Mr. Fina's motions, the Bankruptcy Court held that there were reasonable grounds upon which to grant both motions and set the matter for trial. Because this action was initiated to determine and interpret the scope of the discharge injunction and ultimately whether the Bradleys were in violation of the injunction, the Bankruptcy Court exercised its full discretion to reopen the case. According relief to Mr. Fina upon an allegation of a discharge injunction violation is exactly the type of matter that § 350(b) contemplates is a ground upon which to reopen a case. *See In re Jones*, 367 B.R. at 568 (holding that, "[b]ecause of the central role played by the discharge, reopening a closed case to redress a claimed violation of the discharge injunction is almost routinely granted").

The Bradleys argue that, because their Minnesota lawsuit did not operate to hold Mr. Fina personally liable for the judgment, the Bankruptcy Court lacked cause to reopen the case and, as a matter of law, only actions that seek to hold Mr. Fina personally liable are barred by the injunction. However, this argument fails because, in order for the Bankruptcy Court to properly determine whether a violation occurred in the first instance, it must first reopen the case and hold a hearing on the matter, providing the parties an opportunity to argue the merits of the claimed violation. Certainly, clearly meritless claims are not a basis to reopen a case, but the Bankruptcy Court is bound not to decide the merits of facially legitimate claimed violations on a motion to reopen. *In re Jones*, 367 B.R. at 567. This is exactly the situation of requiring Mr. Fina to "prove his claim twice" that is sought to be avoided at this initial stage. *Id.* Therefore, the Court affirms the Bankruptcy Court's decision to reopen this case because Mr. Fina properly sought relief to redress an alleged violation of the discharge injunction, and thus, the Bankruptcy Court did not abuse its discretion in reopening the case to accord Mr. Fina relief.

### B. Contempt Finding for Violating the Discharge Injunction

The Court affirms the Bankruptcy Court's determination that the Bradleys' post-discharge conduct and their state lawsuit filed in this case violated the discharge injunction because the Bankruptcy Court's underlying factual finding that the Bradleys sought to recover the debt as a personal liability to Mr. Fina, knowing the debt was discharged and therefore unrecoverable pursuant to the discharge injunction, is not erroneous. These findings support the Bankruptcy Court's conclusion that the Bradleys violated the discharge injunction under § 524(a)(2).

Section 524(a) of Title 11 of the United States Code dictates the relief debtors receive under a bankruptcy discharge. This Section provides that a discharge

> voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged . . . and operates as an injunction against the commencement or continuation of an action . . . to collect, recover or offset any such debt as a personal liability of the debtor . . . .

11 U.S.C. § 524(a)(1)-(2) (2012). There is no private right of action for violations of a discharge injunction. *Pearson v. Bank of America*, No. 3:12-cv-00013, 2012 WL 2804826, at *4 (W.D. Va. July 10, 2012). However, Section 105 authorizes the Bankruptcy Court to hold a party in civil contempt for violating its discharge order. *Id.*

In order to prove that a creditor is in contempt of a discharge order, the debtor has the burden of proving that (1) the creditor actually violated the order and (2) the violation was willful. *Id.* Thus, Mr. Fina must prove two elements. First, to demonstrate that a violation of the discharge injunction occurred, Mr. Fina must prove that the Bradleys' acts constituted an effort to collect or recover the discharged debt as a personal liability to him. *Id.* Second, to demonstrate willfulness, Mr. Fina must prove that the Bradleys committed an intentional act to recover the

discharged debt with the knowledge of the discharge injunction. *Id.* In the context of civil contempt arising from the violation of a discharge injunction, "the state of mind with which the contemnor violated the court order is irrelevant and therefore good faith, or the absence of intent to violate the order, is no defense." *In re Cherry*, 247 B.R. 176, 187 (Bankr. E.D. Va. 2000). "Willful conduct refers to deliberateness of conduct and knowledge of [the] bankruptcy [order], not to specific intent to violate [the] court order." *Scott v. Wells Fargo Home Mortg., Inc.*, 326 F. Supp. 2d 709, 718 (E.D. Va. 2003).[2]

### *1. Personal Liability*

As to the first element of civil contempt, the actual violation element, the Bankruptcy Court found that the Bradleys' Minnesota Complaint constituted an act to recover a discharged debt from Mr. Fina as a personal liability. The Bankruptcy Court's basis for this finding was that (1) the Minnesota Complaint on its face was an attempt to collect the debt from Mr. Fina and was not sufficiently tailored to guarantee that Mr. Fina would not be liable for any part of the judgment; and (2) the collateral consequences of the docketed judgment without the necessary limiting conditions, which can only be imposed by first seeking relief from the Bankruptcy Court prior to proceeding in state court, threatened Mr. Fina's fresh start guaranteed to him by his discharge. The Court holds that these findings are not erroneous for two reasons.

First, the record supports the Bankruptcy Court's finding that the Bradleys sought to hold Mr. Fina personally liable for the judgment. It is undisputed that the Bradleys filed their lawsuit, which sought monetary damages against Mr. Fina, including attorney's fees and costs, after Mr. Fina received his discharge. The subject of their lawsuit was indeed the very claim under which the discharged debt arose. Here, the Bradleys' act of filing their Minnesota Complaint clearly

---

[2] The Court finds that the willfulness standard applied to discharge injunction violations is the same standard applied to § 362 automatic stay violations. *See In re Cherry*, 247 B.R. 176, 187 (Bankr. E.D. Va. 2000).

subjects Mr. Fina to personal liability for the discharged debt. The mere filing of the lawsuit, seeking judgment against Mr. Fina individually, by its nature constitutes an act to recover a judgment from Mr. Fina personally. Certainly, any judgment obtained from this litigation would be entered against Mr. Fina individually. Additionally, the fact that Mr. Fina would be required to raise his discharge as a personal defense against efforts to collect the judgment is telling of the personal character of the Bradleys' lawsuit against Mr. Fina. Moreover, with the exception of Paragraph 6, the Minnesota Complaint failed to sufficiently disclaim any post-judgment collection efforts beyond the MCRF recovery, which could possibly mitigate Mr. Fina's personal liability. For these reasons, the Court holds that the evidence supports the finding that the Minnesota Complaint facially appears to subject Mr. Fina to personal liability of a discharged debt, and affirms the Bankruptcy Court's findings to this extent.

Second, the record supports the Bankruptcy Court's finding that the collateral consequences of a post-discharge judgment threatened Mr. Fina's fresh start. Specifically, a new state judgment would have potentially been reported to credit agencies and could have been entered in any one of the many indices made available to the public, reflecting a new unsatisfied debt. This is a personal threat to Mr. Fina because entities attempting to document or collect the judgment would not necessarily know of the purported limited purpose of the Bradleys' lawsuit—to collect only from the MCRF—and thus the personal consequences potentially following the judgment further highlight the personal nature of this lawsuit and the risk to Mr. Fina's fresh start.

Moreover, a negative public record of an unsatisfied judgment could also threaten Mr. Fina's potential employment prospects and further damage his ability to reestablish credit and employment. Additionally, there was some disputed evidence in this case that suggested the

Bradleys would have been required to assign the judgment to the MCRF if the MCRF were to make payment. The question then arises whether the MCRF would have attempted to recover its payment through subrogation. Although the evidence remains somewhat ambiguous as to what the MCRF's actual subrogation rights are, if any, the Court nonetheless holds that this evidence further supports the Bankruptcy Court's decision because subrogation could have resulted in Mr. Fina receiving a new legal obligation to reimburse the MCRF, which certainly would have further injured Mr. Fina's fresh economic start. These potential consequences are exactly what the discharge injunction seeks to prevent. The intent behind the permanent injunction is "to eliminate any doubt concerning the effect of the discharge as a total prohibition on debt collection effort, and to ensure that once a debt is discharged, the debtor will not be pressured in any way to repay it." *In re Cherry*, 247 B.R. at 182 (internal quotation marks omitted). With this standard in mind, it cannot be said that there was no doubt that Mr. Fina would at some point be liable for any part of the Minnesota judgment, whether to the Bradleys for any portion of the judgment unsatisfied by the MCRF or to the MCRF directly. For these reasons, the Court affirms the Bankruptcy Court's finding that the Bradleys' actions threatened Mr. Fina's new start.

Concluding that the Bankruptcy Court did not err in finding that the Bradleys' Minnesota lawsuit subjected Mr. Fina to personal liability, the Court also affirms the Bankruptcy Court's conclusion that, because the Bradleys failed to seek leave from the Bankruptcy Court before filing their state lawsuit, the Bankruptcy Court was precluded from modifying the injunction and narrowing the terms of the state lawsuit, which were necessary to preserve Mr. Fina's fresh economic start guaranteed by 11 U.S.C. § 524. Section 524 is clear that the permanent injunction bars post-discharge collection efforts to the extent that those efforts seek to recover discharged debts as a personal liability to the debtor. 11 U.S.C. § 524(a)(2). It follows, then, that actions that

12

do not concern issues of personal liability are not barred by the injunction and no relief from the Bankruptcy Court is required.

However, because the Minnesota Complaint in this case has been determined to subject Mr. Fina to personal liability, it is clear that the Bradleys are barred by the injunction unless relief is sought from the Bankruptcy Court. As the Bradleys recognize, this is not the usual case in which this issue arises. Modifications of discharge injunctions are routinely seen in the insurance context in which personal liability must be established in a lawsuit as a prerequisite for payment on a claim, even when the liable party has a discharge in bankruptcy. *See, e.g., In re Walker*, 927 F.2d 1130 (10th Cir. 1991) (permitting the creditors to pursue their state claim to recover from a state remedial fund upon motion to lift or modify the discharge injunction). However, in these cases, relief is sought from the Bankruptcy Court first to avoid any ambiguity about whether a violation of the debtor's discharge would occur. These claims are eventually permitted to proceed, as was done in this case following the present contempt finding, but only after the Bankruptcy Court has inquired as to the third-party, creditor, or insurer's purpose underlying the post-discharge action and the court has the opportunity to impose limiting conditions designed to protect the debtor from any post-judgment issues that may affect his rights under the discharge or otherwise threaten his fresh start.

The Bradleys invite the Court to consider its case analogous to cases in which insurers are able to proceed directly against debtors with post-discharge lawsuits under the § 524(e) exception, which enables insurers to nominally name debtors as defendants to establish liability as a predicate to paying certain insurance claims, because the MCRF, the Bradleys argue, is a third party similar to an insurer. However, the Court holds that this case is not the situation in which a debtor is merely named as a nominal defendant for the sole purpose of establishing a

debtor's liability for the contractual payment by an insurer. Courts agree, "Section 524(e) permits a creditor to bring, and proceed in, an action nominally directed against a discharged debtor for the sole purpose of proving liability on its part as a prerequisite to recovering from its insurer." *In re Jason Pharm., Inc.*, 224 B.R. 315, 322 (Bankr. D. Md. 1998). Unlike this case, however, insurance cases proceeding under § 524(e) are limited to recovering the maximum coverage of the insurance policy. *Id.* "The reasoning is that suit to collect merely the insurance proceeds *and not the plaintiff's full damages* (should they exceed the insurance coverage) would not create a 'personal liability of the debtor,' because only the insurance company would be asked to pay anything, and hence such a suit would not infringe the discharge." *Id.* at 322 n.9 (quoting *Hendrix v. Page (In re Hendrix)*, 986 F.2d 195, 197 (7th Cir. 1993)). The MCRF, however, cannot be considered analogous to an insurer because the Minnesota lawsuit sought damages in excess of what the MCRF was authorized to pay on the judgment, including attorney's fees and costs. Additionally, unlike insurers, the MCRF does not have a contractual relationship with the parties here, which would further mitigate Mr. Fina's direct liability on the judgment. For these reasons, the Court is not persuaded that the Bradleys are similarly situated as insurers and holds that they are therefore subject to the discharge injunction.

### 2. *Willfulness*

As to the second element of civil contempt concerning willfulness, the Bankruptcy Court found that the Bradleys willfully violated Mr. Fina's discharge injunction because the Bradleys knew of the discharge injunction yet proceeded with their Minnesota lawsuit. The Court affirms the Bankruptcy Court's finding of willfulness because it is clear that the Bradleys' actions were intentional and deliberate.

Here, the evidence showed that the Bradleys were scheduled creditors in Mr. Fina's bankruptcy proceeding and that they received notice regarding the discharge. Additionally, the Bradleys and their counsel were notified by Mr. Fina's counsel that their actions were in violation of the discharge injunction and requested the Bradleys to cease their efforts in Minnesota. Further, the Bradleys and their counsel amended their Minnesota Complaint attempting to disclaim the purpose of their lawsuit. It is clear that this disclaimer was due to their knowledge that the debt, which was the subject of their lawsuit, had been discharged in bankruptcy. Knowledge of the discharge and the intentional act of filing the lawsuit are all that are required.

The Bradleys alternatively argue that, because they did not intend to violate the discharge injunction, their lack of intent mitigates a finding of willfulness. The Court affirms the Bankruptcy Court's ruling that the Bradleys and their counsel were in contempt despite their subjective good faith belief that their actions did not violate the discharge injunction because, as the Bankruptcy Court correctly held, good faith is not a defense to civil contempt and thus a contemnor's state of mind is irrelevant. *In re Cherry*, 247 B.R. at 187. The standard used to determine whether a discharge injunction violation was willful is the same as that applied to violations of automatic stays under § 362. *Id.* It is therefore clear that under prevailing precedent, "the state of mind with which the contemnor violated the court order is irrelevant and therefore good faith, or the absence of intent to violate the order is no defense." *Id.* "Willful conduct refers to deliberateness of conduct and knowledge of [the] bankruptcy [order], not to specific intent to violate [the] court order." *In re Seaton*, 462 B.R. 582, 592 (E.D. Va. 2011). As discussed above, the post-discharge conduct here occurred with the knowledge of the discharge injunction. Whether the Bradleys believed that their actions did not constitute an act to recover a discharged

debt as a personal liability to Mr. Fina, and therefore that the injunction did not apply to them, is irrelevant, and, as a result, they are precluded from raising their good faith or lack of intent as a defense.

Because the Court affirms the Bankruptcy Court's findings that the Bradleys sought to recover a discharged debt as a personal liability to Mr. Fina and that the Bradleys acted willfully, the Court also affirms the Bankruptcy Court's civil contempt finding because the factual findings discussed previously support a finding of contempt. The Court finds that the Bankruptcy Court is correct in that Mr. Fina met his burden of proving both elements of civil contempt. Accordingly, the Court affirms the Bankruptcy Court's finding that the Bradleys and their counsel were in contempt for violating the discharge injunction.

### D. Damages

The Court affirms the Bankruptcy Court's award of attorney's fees and costs, lost wages, and compensation for Mr. Fina's lost vacation time, but the Court reverses the Bankruptcy Court's award for Mr. Fina's pain and suffering, annoyance, and frustration. The Court holds that (1) Mr. Fina is not entitled to such damages because damages for emotional distress are not warranted in civil contempt cases, and (2) in any event, the evidence presented at trial does not support such an award because Mr. Fina did not establish that he suffered from a significant harm beyond trivial anxiety or distress as a result of the Bradleys' violation. Further, because the Bankruptcy Court awarded a blanket judgment of $4,000 representing Mr. Fina's damages for lost wages and vacation pay, which the Court holds are recoverable actual damages, and emotional distress damages, which the Court holds are not recoverable, the Court remands the case to the Bankruptcy Court for its recalculation of this award.

16

### *1. Laches and Waiver*

The Court affirms the Bankruptcy Court's finding that Mr. Fina's delay in raising his bankruptcy discharge as a defense to the Bradleys' post-discharge actions was not unreasonable in this case. This finding supports the conclusion that the doctrines of laches and waiver are inapplicable to this case. Thus, the Court holds that Mr. Fina is not barred from seeking sanctions.

The doctrine of "[l]aches is an equitable defense that is properly invoked when 'unreasonable delay in pressing one's rights . . . prejudices the defendant.'" *In re Varona*, 388 B.R. 705, (Bankr. E.D. Va. 2008). In addition to being a plausible ground upon which to deny the reopening of a bankruptcy case, *In re Kean*, 207 B.R. 118, 123 (Bankr. D.S.C. 1996), laches has been found to be a ground for denying motions for sanctions, *see In re Carl F. Semrau D.D.S., Ltd.*, 356 B.R. 677, 695-96 (Bankr. N.D. Ill. 2006). To prevail on a laches defense, the moving party must prove "(1) [a] lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *In re Loy*, 448 B.R. 420, 440 (Bankr. E.D. Va. 2011).

Similarly, the doctrine of waiver may be applied to bankruptcy cases. *In re AMF Bowling Worldwide, Inc.*, 278 B.R. 96, 101 (Bankr. E.D. Va. 2002). Waiver principles may be applied where "a party voluntarily or intentionally relinquishes a known claim right." *In re Varat Enters., Inc.*, 81 F.3d 1310, 1317 (4th Cir. 1996). "[W]aiver must be express, or, if it is to be implied, [the intention to waive a right] must be established by clear and convincing evidence." *In re Buffalo Coal Co., Inc.*, 418 B.R. 878, 890 (Bankr. N.D. W. Va. 2009) (internal quotation marks and citations omitted). "The essence of waiver is voluntary choice." *Id.*

Here, the Bradleys argue that Mr. Fina's nine-month delay in moving the Bankruptcy Court for relief was unreasonable because Mr. Fina was fully aware of their attempt to recover from the MCRF. Further, the Bradleys argue that this delay prejudiced them because, had Mr. Fina moved for relief earlier, the Bradleys would not have incurred so many legal expenses and costs in litigating this matter. On this point, the Bankruptcy Court acknowledged culpability for the delays in this case to all parties involved. Nonetheless, the Bankruptcy Court found that Mr. Fina had informed his counsel of the bankruptcy discharge, the parties were aware of the discharge injunction, and that because of these facts, Mr. Fina should not be penalized for the delay in seeking relief. The Court affirms the Bankruptcy Court because its findings are not clearly erroneous. The Court concludes that the Bankruptcy Court properly evaluated the testimony of the parties at trial and found that the Bradleys and their counsel acted without the necessary legal knowledge of, or experience in, bankruptcy law and that this formed the basis for much of the delay in this case. This finding coupled with Mr. Fina's repeated assertions to his counsel and the Bradleys and their counsel of his discharge under bankruptcy after they filed the Minnesota Complaint sufficiently mitigates any lack of diligence on Mr. Fina's part. Accordingly, the Court holds that the doctrine of laches and waiver do not bar Mr. Fina from seeking sanctions or recovering damages.

### 2. *Pain and Suffering Damages*

The Court affirms the Bankruptcy Court's award of damages in part and reverses in part. The award of actual damages, including attorney's fees and costs, lost wages, and compensation for Mr. Fina's lost vacation time will stand; however, the award of damages for Mr. Fina's annoyance, pain and suffering, and frustration is reversed because (1) such damages are not recoverable in a civil contempt proceeding, and (2) in any event, the record does not contain

sufficient evidence to establish that Mr. Fina suffered emotional distress or significant harm by the discharge violation.

Upon a finding of contempt, the imposition of civil sanctions may be appropriate. *In re Cherry*, 247 B.R. 176, 187 (Bankr. E.D. Va. 2000). "These sanctions may include actual damages, attorney's fees and, when appropriate, punitive damages." *Id.* The purpose of imposing sanctions is to either (1) force the defendant to comply with the court's order, or (2) compensate the plaintiff for losses sustained because of the defendant's failure to comply. *Id.*

Whether pain and suffering and emotional distress damages are recoverable in the Fourth Circuit for discharge injunction violations is unclear. *See In re Seaton*, 462 B.R. 582, 602 (Bankr. E.D. Va. 2011). In *In re Seaton*, the Court explained two lines of cases that seem in conflict. *Id.* On one hand, *Burd v. Walters*, 868 F.2d 665, 670 (4th Cir. 1989), clearly holds that emotional distress damages are not recoverable in a civil contempt proceeding. To the extent that discharge injunction violations are viewed solely as civil contempt proceedings, Mr. Fina is barred from seeking such damages. On the other hand, there is a line of cases awarding emotional distress damages for § 362 automatic stay violations. *See Green Tree Servicing, LLC v. Taylor (In re Taylor)*, 369 B.R. 282, 288-89 (S.D. W. Va. 2007) (affirming the bankruptcy court's award of emotional distress damages for exacerbation of the debtor's preexisting medical condition induced by creditor's automatic stay violation). Because automatic stay violations are functionally analogous, *see In re Cherry*, 247 B.R. at 187, it follows that discharge injunction violations may fall within this latter line of cases, which permit emotional distress damages. Although the Fourth Circuit has yet to decide whether emotional distress damages are recoverable for § 524 violations or are barred merely because the distress damages claim is raised in a civil contempt proceeding, the prevailing law in this jurisdiction is that, if recoverable,

Mr. Fina must "(1) suffer significant harm, (2) clearly establish the significant harm, and (3) demonstrate a causal connection between that significant harm and the violation . . . ." *In re Seaton*, 462 B.R. at 602.

Here, the Bradleys primarily object to the Bankruptcy Court's award of $4,000, which was awarded as recompense for Mr. Fina's lost time, lost vacation pay, and notably, Mr. Fina's suffering, annoyance, and frustration caused by the Bradleys' post-discharge collection efforts. The Court finds that the entire award of $4,000 is not warranted in this case because, even if Mr. Fina's emotional distress award is not error because it was awarded in a civil contempt proceeding, the Court holds that the evidence failed to prove that Mr. Fina actually suffered emotional harm or damage. Alleged harm can be proven in three ways: (1) corroborating medical evidence; (2) non-expert testimony, *i.e.*, family and friends may testify as to Mr. Fina's mental anguish; and (3) if an egregious violation, the distress may be apparent without the need of corroborative evidence. *In re Seaton*, 462 B.R. at 602. No evidence was submitted to the Bankruptcy Court with respect to Mr. Fina's alleged harm other than his actual damages. The Bankruptcy Court awarded these damages with little explanation and thus the Court does not have the benefit of evaluating the Bankruptcy Court's reasoning. However, the record before the Court is lacking of sufficient evidence to support the claim that Mr. Fina suffered from significant emotional harm beyond merely trivial distress caused by the adversarial nature of these types of proceedings.

Accordingly, the Court reverses the Bankruptcy Court's award of $4,000 to the extent it is an award for pain and suffering or emotional distress and remands this portion of the judgment for recalculation. Notably, Mr. Fina submitted evidence of his lost wages and lost vacation time, which represented a total amount of $7,568.00, and $1,000.00 for pain and suffering. Because

the Bankruptcy Court awarded a blanket judgment in the amount of $4,000, which includes both lost wages and pain and suffering, which the Court holds are recoverable actual damages, and emotional distress damages, which the Court holds are not recoverable, without specifying what portions of the judgment were awarded for each, the Court remands this portion of the judgment to the Bankruptcy Court for its recalculation of this award.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that (1) the Bankruptcy Court did not abuse its discretion in reopening this case upon Mr. Fina's motion; (2) the Bankruptcy Court's determination that the Bradleys' post-discharge conduct and the state lawsuit filed in this case violated the discharge injunction was not erroneous; (3) as this case implicated Mr. Fina's personal liability of a discharged debt the Bradleys and their counsel were required to first seek leave from the Bankruptcy Court before filing the state lawsuit; (4) the Bankruptcy Court's conclusion that the Bradleys acted willfully was not erroneous despite the Bradleys' good faith; and (5) Mr. Fina is not barred by the doctrines of laches and waiver, and the Bankruptcy Court did not err in awarding attorney's fees and costs, lost wages, and compensation for Mr. Fina's lost vacation time but erred in awarding emotional distress damages. Accordingly, the Bankruptcy Court's judgment entered on April 17, 2012 is AFFIRMED in part, REVERSED in part, and REMANDED in part. It is hereby

**ORDERED** that the judgment of the Bankruptcy Court is **AFFIRMED in part, REVERSED in part**, and **REMANDED in part**. The Court **AFFIRMS** the judgment entered in favor of Appellees Christopher J. Fina and Elizabeth Carly Fina and against Appellants Ronald R. Bradley, Terri Lee Bradley, William A. Erhart, and M. Ryan Madison, jointly and severally, in the amount $31,192.98, which includes the attorney's fees and costs awarded to

Appellees' counsel pursuant to the Bankruptcy Court's May 5, 2012 Supplementary Order on

Rule Show to Cause. The Court **REVERSES** the portion of the Bankruptcy Court's award of

$4,000 for lost wages, lost vacation pay, and recompense for pain and suffering, annoyance, and

frustration to the extent that such damages were awarded for pain and suffering or emotional

distress. Accordingly, the Court **REMANDS** the Bankruptcy Court's award of $4,000 for lost

wages, lost vacation pay, and recompense for pain and suffering for its recalculation of this

award.

The Clerk is directed to forward a copy of this Order to counsel of record.

**IT IS SO ORDERED**.

ENTERED this _____ day of November, 2012.

Alexandria, Virginia

11/  /2012

_____ /s/ _____
Gerald Bruce Lee
United States District Judge